KAREN MALCOM, AS CONSERVATOR      )
FOR K.H., A MINOR, KALA M.        )
HOLTKAMP, and TIA HAMM,           )
INVIDIDUALLY AND AS EXECUTOR OF   )
THE ESTATE OF CHRISTOPHER D.      )
DAVIS, assignees of Venture One, Inc.,  )
                                  )
        Plaintiffs,        )
                                  )    No. 15 C 8228
    v.                          )
                                  )    Judge Sara L. Ellis
NATIONAL AMERICAN INSURANCE       )
COMPANY,                          )
                                  )
        Defendant.         )

## OPINION AND ORDER

In February 2008, Kala Holtkamp ("Kala"), her two-year old son K.H., a minor, and

Christopher Davis were traveling on U.S. Highway 218 in Iowa and collided with a truck owned

by Venture One, Inc., driven by Vanya Atanasova. Davis died in the crash, Kala broke her neck,

and K.H. suffered a brain injury. Following the accident, Kala, Davis' mother Tia Hamm

("Hamm"), K.H.'s father Nicholas Finley ("Finley"), and Two Rivers Bank and Trust ("Two

Rivers"), as conservator for K.H., (collectively, the "Iowa Plaintiffs"), filed a lawsuit in the

United States District Court for the Southern District of Iowa (the "Iowa Lawsuit") against

Venture One and others seeking to recover for their injuries resulting from the crash. After

several unsuccessful attempts to settle the matter with Venture One's insurance carrier,

Defendant National American Insurance Company ("NAIC"), the case proceed to trial, where the

Iowa Plaintiffs won a jury verdict of $3,679,325.60, well in excess of the $1,000,000 insurance

coverage Venture One had with NAIC. The Iowa Plaintiffs obtained a judicial lien on the assets

of Venture One, including an assignment of all of Venture One's claims, including its rights against NAIC.

Pursuant to that assignment of rights, the Plaintiffs in this case, Kala, Hamm, and Karen Malcom, the current conservator for K.H., bring this lawsuit alleging that NAIC acted in bad faith by failing to settle the claims against Venture One within the policy limits (Count I) and that NAIC acted in a vexatious and unreasonable manner in its handling of Venture One's insurance claim, in violation of 215 Ill. Comp. Stat. 5/155 (Count II).  NAIC now moves for summary judgment [69] on both Counts, arguing that the bad faith claim fails as a matter of law because the Iowa Plaintiffs never made an offer of settlement that would have settled all claims against Venture One within the policy limits and that the lawyer for the Iowa Plaintiffs did not have authority to make the settlement offers in question.  Because the Court finds that there is a genuine dispute of fact as to whether NAIC acted in good faith in responding to the Iowa Plaintiffs offers of settlement, and because NAIC lacks standing to challenge the validity of the Iowa Plaintiffs' settlement offers based on the authority granted to their attorney and also fails to show by clear and satisfactory proof that the Iowa Plaintiffs' lawyer lacked settlement authority, the Court denies the motion for summary judgment on Count I.  However, the parties agree to dismiss the portion of Count I seeking consequential damages, lost profits, and business disruption to Venture One and Count II in its entirety.  Therefore, the Court grants the motion for summary judgment with respect to the request for those damages to Venture One and Count II.

## BACKGROUND[1]

On February 20, 2008, Kala, K.H., and Davis were traveling on U.S. Highway 218 in Iowa, when they crashed into a truck driven by Vanya Atanasova from behind.  The crash

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts [70].  All facts are taken in the light most favorable to Plaintiffs, the non-movants.

resulted in Davis' death and severe injuries to both Kala and K.H.  After the crash, Kala, Hamm,

K.H.'s father, and the conservator for K.H., Two Rivers, filed a lawsuit against Atanasova and

her employer Venture One, in federal court in Iowa.  Cory Gourley and Robert Rehkemper from

the law firm Gourley, Rehkemper, Lindholm, P.L.C. represented all of the Iowa Plaintiffs except

for Finley in the Iowa Lawsuit.  John Gajdel represented Finley.  Venture One carried a liability

insurance policy with NAIC, which covered Venture One for up to $1,000,000 per incident.  As

Venture One's insurer, NAIC hired attorney Dennis Ogden to defend the lawsuit and controlled

the settlement discussions during the litigation.

On January 17, 2011, Ogden prepared a case evaluation and sent it to Tony Gulley, a

claims manager at NAIC.  In the evaluation, Ogden noted that any potential settlement would

likely need to consider the interests of Medicare and Medicaid because K.H. would require care

over time funded in part by these programs.  From April 4, 2011 through the trial, Iowa Medicaid

had a lien or subrogation interest for K.H.'s medical bills ranging from $91,772.58 to

$106,043.80.  Additionally, as of April 4, 2011, Blue Cross Blue Shield had a lien or subrogation

interest for Kala's accident-related medical bills in the amount of $9,561.14.

Before the case went to trial, Gourley made three settlement offers to Ogden.  The first,

on April 4, 2011, offered to settle the case on behalf of his clients for the limit under the

insurance policy, *i.e.*, $1,000,000.  This offer did not initially include Finley because he was

represented by Gajdel, but on April 13, Gajdel contacted Ogden and informed him that Finley

joined in that demand.  However, John Walz, the Rule 30(b)(6) representative for Two Rivers

testified that he was not aware of this offer before Gourley made it.  On May 6, 2011, the day the

Iowa Plaintiffs' settlement offer expired, Ogden contacted Gourley and rejected the offer without

making a counteroffer.

On May 24, 2011, Walz sent an email to Gourley authorizing him to "settle all claims for the limits of [Venture One's] insurance policy(ies), which I understand to be one million dollars." Doc. 70-5, Depo. Ex. 204. The Iowa Plaintiffs again offered to settle the case on May 27, 2011 for $1 million. This offer included all Iowa Plaintiffs, including Finley, but did not specifically reference third-party lienholders. This offer did not include a definitive deadline for acceptance. On June 1, 2011, Ogden called Gourley to ask if the Iowa Plaintiffs would entertain a counteroffer less than the policy limits. Gourley stated that they would. On June 16, 2011, Gourley spoke with Ogden by phone. During this conversation, Gourley reduced the Iowa Plaintiffs' settlement demand to $950,000. The next day Odgen sent an email to Gourley offering to settle the case for $350,000 for all claims by all Iowa Plaintiffs, including Finley.

From January 17, 2011, when Odgen submitted his case evaluation report, through the end of the trial, the defendants' case deteriorated steadily, increasing the likelihood that they would face a jury verdict well in excess of the policy limit. In his case evaluation report, Odgen noted that the testimony of the only independent witness is "so much different" than the testimony of the driver of the truck and her passenger, which could cause a credibility issue for the defendants. Doc. 70-5, Depo. Ex. 6 at 8236–37. Additionally, he noted that one of the defense experts, "if pressed," would agree that the independent witness' testimony that the Venture One driver was stopped on the side of the road prior to the crash is accurate and that this could affect the credibility of the driver, who firmly states that she did not stop. He recommended that because there was a risk of a significant damage award, the defendants should explore settlement, and that a settlement within the bounds of the insurance limits would be good.

On February 1, 2011, Gulley prepared a Claim Review Memo in which he noted that the issue of liability was highly questionable, but that the potential exposure was "extremely high." Doc. 70-5, Depo. Ex. 7.

On March 3, 2011, the parties deposed Atanasova, the driver of the truck. During the deposition, Atanasova admitted to falsifying her driving logs the day before the crash further compounding her credibility issues. Ogden noted in an email to NAIC that the deposition did not go well after this admission.

On June 3, 2011, Odgen emailed NAIC noting that according to Atanasova's phone records, she was on the telephone with her husband at the time of the crash and that this was not consistent with the testimony Atanasova, her son, and her husband gave, again compounding her credibility issues.

On June 14, 2011, two days before Ogden received the Iowa Plaintiffs' third settlement offer, the judge in the Iowa Lawsuit issued several rulings favorable to the Iowa Plaintiffs on the motions *in limine*. The judge denied the defendants' motion to exclude evidence regarding the falsification of the log books. The judge barred evidence of Kala's traffic citation related to the accident, evidence that Atanasova was not issued a citation, Kala's previous traffic violations, evidence of settlements between Kala and the other Iowa Plaintiffs, and evidence of Kala's past drug use, inpatient treatment, and mental health issues.

The trial began on June 20, 2011. By the third day of the trial, the defendants decided to withdraw their experts and not have them testify. Ogden stated in an email that he did not think he should pay their accident reconstruction expert Gary Cooper.

The jury began deliberations on June 29, 2011. During deliberations they asked questions indicating that they were going to award significant damages to the Iowa Plaintiffs.

The jury asked "Can you clarify how future damages are reduced to present value," Doc. 70-5, Depo. Ex. 66, and "is it possible for us to have a copy of all damages or awards asked for by all plaintiffs?" *Id.* The jury returned a verdict on July 1, 2011, in the amount of $3,679,325.60.

Richard Evans, the Rule 30(b)(6) designee for NAIC, stated during his deposition that NAIC had opportunities to settle the case during the trial and all the way through jury deliberations. Ogden testified that he believed it was "absolutely clear that [NAIC] had the opportunity to settle [the Iowa Lawsuit] within the policy limits." Doc. 70-1, Ex. 13, Ogden Depo. at 187:7–9.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

NAIC moves for summary judgment on Plaintiffs' claim that NAIC acted in bad faith when it failed to settle the Iowa Lawsuit within the policy limits of the insurance policy NAIC provided to Venture One, one of the defendants in the Iowa Lawsuit. NAIC now asserts that it is entitled to summary judgment because Plaintiffs cannot show that NAIC received a valid and binding offer to settle all claims in the underlying case, including potential claims from third-party lienholder and subrogees. NAIC also asserts that in addition to never receiving such an offer, the parties in the underlying case never authorized such an offer. Because there is a genuine dispute as to whether Venture One faced a significant risk of a damages award greatly exceeding the limits under their policy with NAIC, triggering NAIC's affirmative duty to attempt to settle the case, and because there is a genuine dispute as to whether NAIC's responses to the settlement offers made by the Iowa Plaintiffs were made in good faith, the Court denies the motion for summary judgment. Additionally, the Court finds that NAIC does not have standing to challenge the validity of the settlement offers due to lack of actual authorization; therefore, the Court denies the motion for summary judgment on that basis as well.

**I.      Validity of Settlement Offers**

NAIC asserts that the Iowa Plaintiffs' attorney in the underlying case never had authority to make the settlement offers that he made; therefore, NAIC never received a settlement offer that could have relieved it of liability of all claims and it cannot be subject to a bad faith failure to settle claim. Plaintiffs respond that even if this was true, this is an affirmative defense that NAIC did not plead and therefore waived, and that even if NAIC did plead this defense, it has failed to prove that Iowa Plaintiffs' attorney lacked authority by clear and satisfactory proof.

According to the Seventh Circuit, how to determine what is an affirmative defense in diversity cases is not well settled. *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012). If the defense is not one that is enumerated in Federal Rule of Civil Procedure 8(c), courts have applied two approaches to determine whether a defense is an affirmative defense: (1) the defendant bears the burden of proof under state law, or (2) it does not controvert the plaintiff's proof. *Id.* NAIC's argument that the Iowa Plaintiffs' attorney lacked authority to make a binding settlement offer, and therefore, the offers in question were void, is not a defense enumerated under Rule 8(c). Under Iowa law, a party whose attorney made a settlement offer without authority bears the burden of proving by "clear and satisfactory proof" that its attorney acted without authority if the party wishes to void a settlement agreement. *Gilbride v. Trunnelle*, 620 N.W.2d 244, 251 (Iowa 2000). However, this does not answer the question of which party bears the burden in a *bad faith* case, such as this. Neither party cites to any case where either party in a bad faith action raised the issue of authority to settle, likely because it does not logically fit in such an action. There is a rebuttable presumption under Iowa law that attorneys act with authority when they make settlement offers. *Id.* Because this is the presumption, there is nothing in Iowa law stating that a party seeking to rely on the presumption is also required to prove that the presumption is not rebutted. To create such a requirement in a bad faith action would eviscerate the presumption; a presumption that must also be supported by clear and satisfactory proof is no presumption at all. It follows that the right to challenge the validity of a settlement based on a lack of authority rests solely with the party whose attorney is alleged to have acted without authority. NAIC provides no legal support for the premise that in a bad faith action the right to challenge the validity of a settlement offer is transferred to the offeree.

Therefore, the Court finds that this argument has no place in this action as NAIC has no standing to raise the issue.

Even if the Court were to reach the issue of whether or not the Iowa Plaintiffs' counsel had settlement authority, the result would not change. NAIC has not shown by "clear and satisfactory proof" that Gourley was acting without authority. *Id.* The record contains contradictory statements by Iowa Plaintiffs regarding whether Gourley had authority or not, and Gourley himself testified that he had such authority. For example, Walz testified that Two Rivers did not authorize the April 4, 2011, settlement offer, but that it did provide Gourley with written authorization to settle the case within policy limits on May 24, 2011, three days before Gourley made the second written settlement offer to NAIC. Walz testified that he "would have thought that all of [the $1 million settlement] was going to [K.H.]." Doc. 70-1, Ex. 9, Walz Depo. Vol. 1, at 20:16–17. However, Walz also testified that he deferred to the judgment of Gourley and K.H.'s mother with regard to settlement and that he expressed this to Gourley in a conversation on June 2, 2011. Doc. 70-1, Ex. 8, Walz Depo. Vol. 2, at 50:5–22; Doc 70-5, Depo. Ex. 205. During that June 2nd conversation with Gourley, Walz stated that he was not very familiar with the circumstances of the case. *Id.* Based on this evidence, it is far from clear that Gourley lacked Two Rivers' authorization to settle for a within-policy amount. Walz's expressed belief that K.H. would receive all of the $1 million settlement is not a clear statement that Two Rivers did not authorize settlement that would have resulted in some lower recovery for K.H.; it was merely his admittedly poorly informed belief.

With respect to the other Iowa Plaintiffs, the evidence of lack of authority is even shakier. K.H.'s father, Finley, testified that he never authorized a settlement in which he would have received zero dollars. But it is not clear that the offer Gourley made to NAIC would have been

such a settlement. There is no documentation of how the Iowa Plaintiffs would have split the settlement were it reached. Finley definitively authorized settlement within policy limits and "join[ed] in the demand for the policy limits with the other plaintiffs." Doc. 70-5, Depo Ex. 103. Hamm only testified that if the parties settled for a within policy limit amount she would have received some portion of that settlement. It is easily inferred from her testimony that she authorized a within policy limit settlement. How much she would have received and whether she would have been satisfied with that amount is not relevant to whether or not she authorized that settlement. Finally, the parties do not point to any evidence regarding whether Kala authorized the settlement offer. Therefore, the presumption that she did stands.

Thus, the Court finds that NAIC does not have standing to assert lack of authority on behalf of the Iowa Plaintiffs and that even if it did have standing to do so, it has failed to clearly show that Gourley did not have authority to make a within policy limit settlement offer on behalf of all the Iowa Plaintiffs in the underlying case. The Court now turns to whether or not the settlement offers were sufficient to support a claim for bad faith.

## II.      Settlement Offers

There were three relevant settlement offers in the underlying case: two letters and one telephone call. The first letter, sent April 4, 2011, stated that Gourley's clients, which included all plaintiffs in the underlying case except Finley, would accept a settlement for "the policy limits and release any and all further and additional claims above and beyond the policy limits against your clients individually and collectively." Doc. 70-5, Depo. Ex. 14. It stated that the offer would remain open for 14 days. However, the offer did not include any language requiring the Iowa Plaintiffs to pay any outstanding third-party lienholders or subrogees out of the settlement proceeds. On April 13, 2011, while the offer was still open, Gajdel, the attorney for

10

Finley, sent a letter to NAIC's counsel stating that Finley "joins in the demand for the policy limits with the other plaintiffs." Doc. 70-5, Depo. Ex. 103. Gourley subsequently extended the date for NAIC to respond to the April 4th offer to May 6, 2011. On May 6, 2011, NAIC's counsel called Gourley and rejected the offer without making a counteroffer.

On May 27, 2011, Gourley again sent a demand letter to NAIC, offering to settle all claims for the policy limit. On June 1, 2011, Gourley received a telephone call from NAIC's counsel asking if the Iowa Plaintiffs would entertain a counteroffer below the policy limits. Gourley informed him that they would.

On June 16, 2011, Gourley had a telephone call with NAIC's counsel, during which Gourley offered to settle the case for $950,000. Again this demand did not include any mention of the third party lienholders or subrogees. On June 17, 2011, NAIC sent an email to Gourley offering to settle "all claims of the plaintiffs (including Nick Finley)" for $350,000. Doc. 70-5, Depo. Ex. 35.

Each of these three settlement offers, with the possible exception of the April 4th offer, presented an opportunity for NAIC to settle all of the Iowa Plaintiffs' claims against it within or at the limits of the policy, but NAIC argues that because these offers did not mention the rights of the third party lienholders and subrogees, they are not sufficient to support a bad faith failure to settle claim.

To succeed on a failure to settle claim, a party must show that "the insurer knew claims would exceed the policy limits, that such knowledge overlapped in time with an opportunity to settle the case, that a settlement would have addressed all claims against the insured, and that the insurer nevertheless failed to equally value its own interests and the insured's interests in failing to settle." *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 215 F. Supp. 3d 728, 741 (S.D. Ill. 2016),

11

*aff'd*, 878 F.3d 219 (7th Cir. 2017).  The opportunity to settle the case must be one that gave the

insurer the opportunity to resolve all claims against it.  *Id.* (citing *Sanders v. Standard Mut. Ins.*

*Co.*, 492 N.E.2d 917, 918–20, 142 Ill. App. 3d 1082, 97 Ill. Dec. 258 (1986)).  Without a

showing that a "defendant could have ended its potential liability to [the plaintiffs] within policy

limits," Plaintiffs cannot prove a bad faith claim.  *Sanders*,  492 N.E.2d at 918–19.

NAIC does not assert that it did not know that claims would exceed policy limits, but

limits its motion to its argument that the Iowa Plaintiffs never made an offer that, if accepted,

would have addressed all claims against NAIC.  As stated above, none of the three offers the

Iowa Plaintiffs made to NAIC addressed the interests of the third party lienholder or subrogees.

NAIC argues that this omission defeats Plaintiffs' bad faith claim as a matter of law.  This is not

correct.  NAIC, as the insurer, generally does not have a duty to initiate settlement discussions.

*W. Side Salvage*, 215 F. Supp. 3d at 740.  However, such a duty is triggered where "the

probability of an adverse finding on liability is great and the amount of probable damages would

greatly exceed the coverage."  *Id.* (quoting *Kavanaugh v. Interstate Fire & Cas. Co.*, 342 N.E.2d

116, 121, 35 Ill. App. 3d 350 (1975)).  And even in cases where NAIC is not required to initiate

settlement discussions, it has a duty to respond to offers of settlement in good faith.  *Haddick ex*

*rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 303, 198 Ill. 2d 409, 261 Ill. Dec. 329 (2001) (an

insurer has a duty to act in good faith to its insured in responding to settlement offers).

Whether NAIC was facing a considerable possibility that the damages would greatly

exceed the insured's coverage under the policy is a question of fact.  Plaintiffs have adduced

sufficient evidence that a reasonable jury could conclude that this was the case.  As noted above,

Atanasova's credibility increasingly deteriorated as the case progressed towards trial, making a

verdict for the Iowa Plaintiffs more likely.  There is no dispute that the potential damages if a

jury found Venture One liable would be substantial. At trial, the defendants withdrew their experts because they did not think their testimony would be useful. Additionally, the trial judge excluded evidence that was not favorable to the Iowa Plaintiffs, such as Kala's traffic citation and her substance abuse and mental health history. If the jury were to conclude that NAIC knew that Venture One was highly likely to face liability far exceeding the policy coverage, then NAIC's duty to initiate settlement discussions would be triggered, and they would have had a duty to attempt to settle the case within the policy limits. A reasonable jury could conclude that faced with an affirmative obligation to initiate settlement, and in receipt of an offer to settle all claims against it for an amount within the policy limits, NAIC had a good faith obligation to respond to the Iowa Plaintiffs' offers to clarify whether or not the Iowa Plaintiffs intended to include language addressing the rights of the subrogees and third party lienholders.[2]

Even if this affirmative duty were not triggered, NAIC still had a duty to respond to settlement offers in good faith. *See Ill. Emcasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 2015 IL App (1st) 140928-U, 2015 WL 6953928 at *12, as modified (Nov. 9, 2015) ("It is well-established that an insurer has a duty to act in good faith to its insured in responding to settlement offers."). "To determine whether a party has breached this duty to settle, courts look for two factors: 1) a carrier's control over defense and settlement negotiations and 2) a reasonable probability of a finding of liability against the insured in excess of policy limits." *Id.*

---

[2] NAIC even stated that a promise by plaintiffs to satisfy all third party interests from the settlement proceeds is common in personal injury cases. Given that such a term is a common part of such settlements, NAIC was aware of the existence of such third party interests at the time of settlement, and inclusion of this term in the settlement agreement would have given NAIC a full release of all potential claims against it, a reasonable jury could conclude that NAIC acted in bad faith and without the best interests of its insured in mind when it failed to make a counteroffer to the Iowa Plaintiffs noting this deficiency and seeking a settlement within policy limits. Furthermore, because the Iowa Plaintiffs ultimately paid these liens themselves and the third parties did not seek payment from NAIC, it is reasonable to infer that Iowa Plaintiffs would have accepted such an offer, if they did not already assume that it was included in the offer they made to NAIC.

(citing *Haddick*, 763 N.E.2d at 304).  The parties do not address in their briefing what level of control NAIC had over the settlement negotiations, but the record clearly shows that NAIC retained Ogden and directed him to make various settlement offers and to reject the offers from the Iowa Plaintiffs.  Therefore, there is sufficient evidence to satisfy the first prong.  Additionally, the second prong is supported by the same facts listed above that tend to show the liability exposure for Venture One well exceeded the policy coverage.  Based on the facts above, a reasonable jury could conclude that NAIC's failure to respond to the offer of settlement with a request that the settlement address the third-party lienholders was not in good faith.

In its reply, NAIC also asserts it responded to the settlement offer with a $350,000 counter offer, and that such a counter offer is in good faith as a matter of law.  It does not cite any support for this argument, appearing to rest on the idea that any counter offer is adequate to meets its obligations.  This is not so.  NAIC's duty to settle is derived from the principle that because insurers typically have the sole right to control litigation on behalf of the insured, they are required to give the insured's interests equal consideration to their own.  *Haddick*, 763 N.E.2d at 304 (when liability is likely to exceed the policy limits, "the insurer must take the insured's settlement interests into consideration").  Whether an insurer's counteroffer satisfies its obligations under its good faith duty to settle is a question for the jury.  *See id.* at 306 (whether insurer's response to a plaintiff's settlement offer constituted bad faith is a question for the finder of fact).  Here, Plaintiffs have adduced ample evidence that the insured was facing liability well in excess of the policy, potentially as much as $10 million over the policy limit and likely more than $2 million over the policy limit.  Additionally, the record supports a finding that the Iowa Plaintiffs were highly unlikely to accept the $350,000 counter offer and that NAIC knew this.

Therefore, a reasonable jury could find that NAIC's $350,000 counter offer was not a good faith response to the Iowa Plaintiffs' settlement offer.

Therefore, the Court denies the motion for summary judgment because there is a genuine issue of material fact as to whether or not NAIC had an opportunity to settle the Iowa Lawsuit within the policy limits and did not exercise good faith in its failure to do so.

## CONCLUSION

For the foregoing reasons the Court grants in part and denies in part NAIC's motion for summary judgment [69]. The Court grants the motion with respect to Plaintiffs' request for consequential damages, lost profits, and business disruption to Venture One and Count II in its entirety and denies the motion with respect to the remainder of Count I.

Dated: February 13, 2018

_____
SARA L. ELLIS
United States District Judge